UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ALEKSEY RUDERMAN, ARTURO SALDIVAR, and CHRIS POCKNELL on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br><br>against<br><br>KENOSHA COUNTY, KENOSHA COUNTY SHERIFF'S DEPARTMENT, DAVID G. BETH, ROBERT HALLISY, LARRY APKER, MARC LEVIN, JUSTIN MILLER, and BILL BETH<br><br>                              Defendants. | Docket No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT FOR FORCED LABOR**

Plaintiffs ALEKSEY RUDERMAN, ARTURO SALDIVAR, and CHRIS POCKNELL, on behalf of themselves and all others similarly situated, by and through their attorneys, for their Complaint against Defendants KENOSHA COUNTY, KENOSHA COUNTY SHERIFF'S DEPARTMENT, DAVID G. BETH, ROBERT HALLISY, LARRY APKER, MARC LEVIN, JUSTIN MILLER, and BILL BETH, allege as follows:

**PRELIMINARY STATEMENT**

1. This is a putative class action complaint arising from Defendants' violations of the forced labor provisions in the federal Trafficking Victims Protection Act (the "TVPA"), 18 U.S.C. §§ 1589, 1595, and related state law.

2. Plaintiffs were civilly detained immigrants who were subjected to forced labor while detained at the Kenosha County Detention Center (referred to herein as the "Kenosha County Jail" or "Jail") in Kenosha, Wisconsin. Specifically, Plaintiffs were forced to perform

various janitorial services (hereinafter "janitorial labor") without compensation and against their will.

3. The Kenosha County Jail unlawfully forced civil immigrant detainees to perform janitorial labor. The civilly detained immigrants received no compensation whatsoever for performing janitorial labor, which was mandatory. When immigrants, including Plaintiffs, refused to perform this labor, they were either punished or threatened with the punishment of being put on lockdown in their cell or being sent to solitary confinement, also known as disciplinary segregation, or more colloquially as the "hole."

4. Solitary confinement causes severe mental pain and suffering and can even bring on new psychiatric syndromes due to the effects of isolation.[1] The serious harms of solitary confinement can often last after a detainee is released into the general population or the outside world.

5. Plaintiffs seek to recover damages on behalf of themselves and all current and former civil immigration detainees who were forced to perform labor while being held in the Kenosha County Jail.

6. The practice of forcing immigrants to perform janitorial labor under the threat of punishment is a violation of federal human trafficking laws. Specifically, the TVPA provides a civil cause of action against:

> (a) Who[m]ever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—
>
> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

---

[1] Stuart Grassian, *Psychiatric Effects of Solitary Confinement*, WASHINGTON UNIVERSITY JOURNAL OF LAW & POLICY (Jan. 2006), https://openscholarship.wustl.edu/cgi/viewcontent.cgi?article=1362&context=law_journal_law_policy.

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. §§ 1589, 1595.

7. As the U.S. Department of Justice recently explained (Case No. 21-2846, ECF No. 35, 3d Cir., Jan. 13, 2022), the TVPA "broadly prohibits coercive labor practices" and "was designed to encompass a wide range of coercive conduct," including "'cases in which persons are held in a condition of servitude through nonviolent coercion,' which might 'have the same purpose and effect' of physical or legal coercion.'"

## **PARTIES**

8. At times relevant to this Complaint, Plaintiffs Aleksey Ruderman, Arturo Saldivar, and Chris Pocknell were civil immigration detainees at the Kenosha County Jail and were forced to perform janitorial labor against their will and without compensation.

9. At all times relevant to this Complaint, Defendant Kenosha County was a public entity operating within the State of Wisconsin. Defendant Kenosha County is responsible for funding the Kenosha County Sheriff's Department and, in turn, the Kenosha County Jail, and thereby benefitted financially from Plaintiffs' forced labor.

10. At all times relevant to this Complaint, Defendant Kenosha County Sheriff's Department was a public entity within the State of Wisconsin that operated the Kenosha County

3

Jail, obtained Plaintiffs' forced labor, and benefitted financially from forced labor at the Kenosha County Jail.[2]

11. At all times relevant to this Complaint, Defendant David Beth was an individual who held the position of Kenosha County Sheriff. Defendant Beth set policy for the Kenosha County Jail and obtained Plaintiffs' forced labor. Defendant Beth is sued in his individual capacity.

12. At times relevant to this Complaint, Defendants Robert Hallisy, Larry Apker, Marc Levin, Justin Miller, and Bill Beth were individuals who oversaw the Kenosha County Jail. These individuals enforced rules requiring Plaintiffs to engage in forced labor. Defendants Hallisy, Apker, Levin, Miller, and Beth are sued in their individual capacities.

## JURISDICTION AND VENUE

13. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, as Plaintiffs bring suit under the federal TVPA.

14. The state law claims in this action are so related to the federal claims that they form part of the same case or controversy. The Court's jurisdiction over these claims is invoked under 28 U.S.C. § 1367.

15. Venue is proper in the United State District Court for the Eastern District of Wisconsin pursuant to 28. U.S.C. § 1391(b)(1) because the Defendants are located in the Eastern District of Wisconsin, and pursuant to § 1391(b)(2) because all of the acts and/or omissions complained of herein occurred within the Eastern District of Wisconsin.

---

[2] Throughout this Complaint, all references to "Kenosha County Sheriff's Department" also mean the Kenosha County Sheriff in his official capacity; they are legally equivalent. *See McMillian v. Monroe County, Alabama*, 520 U.S. 781, 785 n.2 (1997).

## STATEMENT OF FACTS

16. Defendants operate the Kenosha County Jail located at 4777 88th Ave., Kenosha, Wisconsin 53144.

17. On or around August 1, 2000, Kenosha County entered into an Intergovernmental Service Agreement with the U.S. Marshals Service and the Immigration and Naturalization Service ("INS") to house civil immigration detainees for U.S. Immigration and Customs Enforcement ("ICE").

18. Pursuant to this Agreement, Kenosha County received payment in the amount of $70.00 per day for each civil immigration detainee housed at the Kenosha County Jail.

19. The Kenosha County Jail housed over 100 civil immigration detainees at any given time. In exchange for housing these individuals, Kenosha County received more than $2.6 million in revenue each year.

20. Plaintiffs Aleksey Ruderman, Arturo Saldivar, and Chris Pocknell were civilly detained immigrants housed at the Kenosha County Jail.

21. In the course of their detention at Kenosha County Jail, Plaintiffs were forced to clean the common areas of the facility, known as "dayrooms," which included showers and an indoor recreational area, as well as the facility's outdoor recreation area, hallways, and gym.

22. Corrections officers at the Kenosha County Jail would, on a daily basis, select approximately four to six civilly detained immigrants, including all the Plaintiffs named in this Complaint, and order them to perform janitorial labor.

23. Plaintiffs, at all times, had no option to refuse these orders to clean the common areas of the facility.

24. Kenosha County Sheriff's Department Inmate/Detainee Handbook (the "Handbook") requires civil immigration detainees to clean the Jail's common areas or face punishment. For example, the Handbook states: "The housing units will be cleaned after breakfast movement as directed by Jail staff, with the cells, dayrooms, and sleeping areas cleaned by the inmate/detainee occupying those areas."

25. The Handbook threatens a series of punishments for detainees who fail to follow forced labor rules, ranging from loss of privileges and being required to perform *additional* forced labor to being held for up to 10 days in solitary confinement.

26. The Handbook was disseminated to all civilly detained immigrants upon arrival at the Kenosha County Jail.

27. All Plaintiffs performed janitorial labor at the facility against their will and only because they were actually punished or operated under the threat of punishment by disciplinary segregation if they refused to perform forced labor.

28. Plaintiffs never volunteered to perform janitorial labor, nor did they consent.

29. Plaintiffs were never offered any compensation for any of their janitorial labor.

### FACTS SPECIFIC TO PLAINTIFFS

**A.  Plaintiff Aleksey Ruderman**

30. Aleksey Ruderman was housed in the Kenosha County Jail in or around 2020.

31. Shortly after arriving at the Kenosha County Jail, Mr. Ruderman observed Jail staff ordering detainees to perform janitorial labor.

32. When Mr. Ruderman asked a Kenosha County corrections officer about the Jail's mandatory cleaning policy, the officer told him that he would be subject to punishment should he refuse his cleaning duties.

33. Mr. Ruderman subsequently submitted a formal grievance[3] to the Kenosha County Sheriff's Department on February 12, 2020, asserting that the Jail forced him to clean the dayroom and that this forced labor violated the TVPA. He also requested that the Jail change its mandatory cleaning policy to conform to the TVPA.

34. The Sheriff's Department sent Mr. Ruderman a letter dismissing his grievance on February 12, 2020. The denial letter stated, in relevant part, as follows:

> As stated in the Kenosha County Inmate/Detainee Handbook, it is your responsibility to keep yourself and living area clean. The cleaning responsibilities are given to different inmate/detainees every day, to ensure all cleaning responsibilities are distibuted [sic] evenly.

35. Seargent Schroeder, an officer at the Kenosha County Jail, personally admonished Mr. Ruderman about his grievance, while carrying a taser, warning him not to "rock the boat."

36. Mr. Ruderman submitted an appeal to the denial of his grievance, stating: "I am forced to clean the dayroom for no pay and under threat of solitary confinement." He also reiterated that this forced labor violated the TVPA.

37. His appeal was denied, and the Inmate Grievance Response Form denying his appeal stated:

> While being housed at this facility, every inmate/detainee is expected to keep their living areas cleaned [sic]. Inmates/Detainees are assigned cleaning duties daily, and these responsibilities are distributed evenly. As our Inmate/Detainee Handbook states, you must continue to follow all legal orders and commands from the facility officers, including the cleaning of your own living space.

38. About once every two weeks during his period of detention, Defendants forced Mr. Ruderman and other civil immigration detainees to perform janitorial labor during four cleaning sessions: after breakfast, after lunch, after supper, and before nighttime lockdown.

---

[3] Mr. Ruderman's grievance and appeal as well as the Jail's responses thereto are attached hereto as Exhibit A.

Following breakfast, lunch, and supper, he was required to sweep the dayroom floor and to clean and disinfect the dining tables. Before nighttime lockdown, he was forced to clean the showers, tables, phones, indoor recreational area, and multi-purpose room; sweep the floor in those entire areas; and perform any other assorted cleaning jobs assigned by officers.

39. Mr. Ruderman performed janitorial labor at the facility only because Defendants forced him to do so under the threat of punishment. Had he been provided with a choice about whether he would clean any area of the facility, he would have elected not to do so during each and every instance in which he was ordered to clean.

### B. Plaintiff Arturo Saldivar

40. Arturo Saldivar was housed in Kenosha County Jail for several months beginning in or around 2016.

41. Approximately two to three times per week during his period of detention at the Jail, Defendants forced Mr. Saldivar to perform janitorial labor, including cleaning the Jail's outdoor recreation area, hallways, and gym.

42. Mr. Saldivar witnessed other immigrants resisting orders to clean and consequently being punished by being placed in solitary confinement, or the "hole," for several days.

43. Mr. Saldivar performed janitorial labor at the facility only because Defendants forced him to do so under the threat of punishment. Had he been provided with a choice about whether he would clean any area of the facility, he would have elected not to do so during each and every instance in which he was ordered to clean.

### C. Plaintiff Chris Pocknell

44. Plaintiff Chris Pocknell was housed in the Kenosha County Jail in or around 2014 to 2016.

45. Approximately twice a week during his detention in Defendants' facility, Defendants forced Mr. Pocknell—along with about four to six other civilly detained immigrants on any given day—to perform janitorial labor, including cleaning the showers, dayroom dining tables, phones, indoor recreational area, and multi-purpose room and sweeping the floor in those areas. On many occasions, Defendants forced Mr. Pocknell to perform his assigned janitorial labor without protective cleaning gear.

46. Mr. Pocknell performed janitorial labor at the facility only because Defendants forced him to do so under the threat of punishment. Had he been provided with a choice about whether he would clean any area of the facility, he would have elected not to do so during each and every instance in which he was ordered to clean.

47. For a period of time during his detention, Mr. Pocknell suffered from a knee injury for which he wore a prescribed knee brace. On account of his knee injury and because he was otherwise in poor health, he refused to perform the mandatory janitorial labor on several occasions. Defendants punished him for his refusal to clean by (i) sending him to solitary confinement on one occasion, (ii) locking him down in his cell for three days at a time on multiple other occasions, (iii) revoking his phone privileges on every occasion he was punished, and (iv) revoking his commissary privileges on several occasions.

## CLASS ALLEGATIONS

48. Plaintiffs bring their claims on behalf of themselves, and all others similarly situated pursuant to Federal Rule of Civil Procedure 23(a) on the basis that there is a well-

defined community of interest in this litigation, the proposed class is easily ascertainable, and the proposed class is quite numerous.

49. Plaintiffs' claims concern the mandatory, uncompensated work Plaintiffs and others similarly situated performed at the Kenosha County Jail.

50. Pending any modifications necessitated by discovery, Plaintiffs preliminarily define this Forced Labor class as follows:

> All civil immigration detainees who were forced to perform uncompensated janitorial labor in the Kenosha County Detention Center from 10 years prior to the filing of this Complaint.

51. On information and belief, the injury to Plaintiffs and the putative class is substantial, exceeding one million and as much as several million dollars. Plaintiffs and the putative class were regularly subjected to the statutory and common-law violations described herein, throughout their time at the Kenosha County Jail. On information and belief, the legal and factual issues are common to the class and affect all class members.

52. Plaintiffs reserve the right to amend or modify the class descriptions with greater specificity or division into subclasses, as well as to limit the class, subclasses, or particular issues, as warranted.

**A. Numerosity**

53. All members of the Forced Labor class were forced to work during their detention.

54. The class is so numerous that the joinder of all potential class members is impracticable. The exact size of the class is within the control of Defendants. However, Plaintiffs believe the class size is in the thousands. On information and belief, membership of the class is readily ascertainable from Defendants' detention records.

### B. Commonality and Predominance

55. The operative questions of law and fact regarding the liability of Defendants are common to the class and predominate over any individual issues which may exist. Common questions of law and fact include: whether the policy of requiring Plaintiffs and the class members to perform forced janitorial labor in the Kenosha County Jail with no pay and under threat of punishment violated 18 U.S.C. § 1589 and whether Defendants were unjustly enriched by virtue of requiring Plaintiffs to perform uncompensated janitorial labor at the facility.

### C. Typicality

56. The claims asserted by Plaintiffs are typical of the claims of all the class members. The claim at issue arises from a policy applicable to all members of the class. Each member of the class suffered the same violations that give rise to Plaintiffs' claims. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging identical causes of action would not serve the interests of judicial economy.

### D. Adequacy of Representation

57. The representative Plaintiffs will fairly and adequately protect the interests of the members of the class. Because all class members were subject to the same violations of law perpetrated by Defendants, the interests of absent class members are coincident with, and not antagonistic to, those of Plaintiffs. The representative Plaintiffs will litigate their claims fully.

58. The representative Plaintiffs are represented by counsel experienced in class action and civil rights litigation.

### E. Superiority of Class Action

59. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for Defendants. If Defendants' forced labor policy was unlawful as applied to representative Plaintiffs, it was unlawful as applied to the members of the putative class.

60. Those class members who labored for Defendants for short periods of time have smaller claims that they are unlikely to bring individually. All members of the class have claims which are factually similar and legally identical to Plaintiffs' claims. Thus, the interest of the members of the class in individually controlling the prosecution or defense of separate actions is slight, while the remedial purpose of the forced labor statutes counsels toward vindicating the rights of those class members with smaller claims as part of the larger class.

61. Plaintiffs are unaware of any members of the putative class who are interested in presenting their claims in a separate action.

62. Plaintiffs are unaware of any pending litigation commenced by members of the class concerning the instant controversy.

63. It is desirable to concentrate this litigation in this forum because all claims arose in this Judicial District.

64. The class action will not be difficult to manage due to the uniformity of the claims among the class members and the susceptibility of this case to both class action litigation and the use of representative testimony and representative documentary evidence.

65. Upon information and belief, the contours of the class will be easily defined by reference to the detention records Defendants created and maintained.

# FIRST CLAIM FOR RELIEF

## VIOLATION OF THE TRAFFICKING
## VICTIMS PROTECTIONS ACT (18 U.S.C. §§ 1589, 1595)

66. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

67. Plaintiffs allege this claim on their own behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23.

68. This Count concerns the mandatory, uncompensated labor Plaintiffs and others similarly situated performed at the Kenosha County Jail.

69. Defendants Kenosha County Sheriff's Office, David Beth, Robert Hallisy, Larry Apker, Marc Levin, Justin Miller, and Bill Beth violated the federal Trafficking Victims Protections Act when they forced Plaintiffs and others to perform labor at the Kenosha County Jail for no pay.

70. Defendants coerced this labor through both explicit and implied threats that those who refused to perform such uncompensated work would be subject to discipline, up to and including solitary confinement.

71. Defendants coerced this labor through a uniform policy subjecting detainees who refused to perform such uncompensated work to discipline, up to and including solitary confinement.

72. Defendants provided or obtained the labor or services of Plaintiffs and others by means of physical restraint or threats of physical restraint to Plaintiffs and others in violation of 18 U.S.C. § 1589(a)(1).

73. Defendants provided or obtained the labor or services of Plaintiffs and others by means of serious harm or threats of serious harm to Plaintiffs and others in violation of 18 U.S.C. § 1589(a)(2).

74. Defendants provided or obtained the labor and services of Plaintiffs and others by means of a scheme, plan, or pattern intended to cause the Plaintiffs and others to believe that, if they did not perform such labor or services, they would suffer serious harm or physical restraint, including solitary confinement in violation of 18 U.S.C. § 1589(a)(4).

75. Plaintiffs and others similarly situated were victims of forced labor as defined by 18 U.S.C. § 1589.

76. Defendants Kenosha County and Kenosha County Sheriff's Office knowingly benefited financially from Plaintiffs' forced labor.

77. As a result of the misconduct described in this claim for relief, Plaintiffs suffered damages, including but not limited to emotional distress.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF WIS. STAT. § 940.302

78. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

79. Plaintiffs allege this claim on their own behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23.

80. This Count concerns the mandatory, uncompensated labor Plaintiffs and others similarly situated performed at the Kenosha County Jail.

81. Defendants secured Plaintiffs' janitorial labor by means of a scheme, plan, or pattern intended to cause the Plaintiffs and others to believe that, if they did not perform such labor, they would suffer serious harm, including solitary confinement.

82. Defendants caused and threatened to cause Plaintiffs and others to perform janitorial labor against their will and without their consent.

83. As a result of the misconduct described in this claim for relief, Plaintiffs suffered injuries, including but not limited to emotional distress.

### THIRD CLAIM FOR RELIEF

### UNJUST ENRICHMENT

84. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

85. Plaintiffs allege this claim on their own behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23.

86. Defendants have unjustly retained a benefit to the Plaintiffs' detriment by having certain areas of Kenosha County Jail cleaned, for free, without having to hire or contract the labor of custodians that would otherwise have been compensated, or without compensating Plaintiffs.

87. Defendants' retention of that benefit violates the fundamental principles of justice, equity, and good conscience because Defendants cut costs by forcing detainees to labor for free under the threat of punishment, including solitary confinement.

88. Plaintiffs are entitled to recover from Defendants all amounts that Defendants have wrongfully and improperly obtained, and Defendants should be required to disgorge to Plaintiffs and the class the benefits they have unjustly obtained.

# FOURTH CLAIM FOR RELIEF

## INDEMNIFICATION

89. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

90. Plaintiffs allege this claim on their own behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23.

91. At all times relevant to this Complaint, Defendants David Beth, Robert Hallisy, Larry Apker, Marc Levin, Justin Miller, and Bill Beth were acting within the scope of their employment for the Kenosha County Sheriff's Office.

92. Wisconsin law requires public entities to indemnify and pay tort judgments for compensatory damages for which employees are liable within the scope of their employment.

93. Wisconsin law requires Kenosha County to indemnify and pay tort judgments against the Kenosha County Sheriff's Office.

94. Defendant Kenosha County is thus obligated to indemnify any judgment against Defendants Kenosha County Sheriff's Office, David Beth, Robert Hallisy, Larry Apker, Marc Levin, Justin Miller, and Bill Beth in this matter.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Forced Labor class, request judgment as follows:

95. Certifying the Forced Labor class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the class, and designating Plaintiffs' counsel as class counsel;

96. Awarding Plaintiffs and the class members compensatory damages, actual damages, punitive damages, and statutory damages, in an amount exceeding $5,000,000, to be determined by proof;

97. Awarding Plaintiffs and the class members the costs of prosecuting this action, including expert witness fees;

98. Granting Plaintiffs and the class members declaratory and equitable relief, including restitution and disgorgement;

99. Declaring unlawful the practices described herein and enjoining Defendants from engaging in such conduct in the future;

100. Awarding Plaintiffs and the class members reasonable attorneys' fees and costs as allowable by law;

101. Awarding pre-judgment and post-judgment interest;

102. Entering judgment in Plaintiffs' favor and against all Defendants on all claims; and

103. Granting any other relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs hereby demand a trial by jury of all issues so triable in this case.

Dated: October 10, 2023   By:   /s/ *Margaret E. Truesdale*
Elizabeth N. Mazur
Margaret E. Truesdale
HUGHES SOCOL PIERS RESNICK & DYM, LTD.
70 W. Madison St., Ste. 4000
Chicago, IL 60602
(312) 580-0100
emazur@hsplegal.com
mtruesdale@hsplegal.com

Jay Kumar
JAY KUMAR LAW
73 W. Monroe St., #100
Chicago, IL 60603
(312) 767-7903
Jay@JayKumarLaw.com

Raphael Janove
Adam Pollock
POLLOCK COHEN LLP
111 Broadway, Suite 1804
New York, NY 10006
(212) 337-5361
Rafi@PollockCohen.com
Adam@PollockCohen.com

Jacob S. Briskman
LAW OFFICE OF JACOB S. BRISKMAN
2054 N. California Ave
Chicago, IL 60647
(312) 945- 6207
Jacob.Briskman@gmail.com

*Attorneys for Plaintiffs and the Proposed Class*